```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
ETERNAL ASIA SUPPLY CHAIN                                   :
MANAGEMENT (USA) CORP.,                                     :
                                                            :
                              Plaintiff,                    :     12 Civ. 0058 (JPO)
                                                            :
                 -v.-                                       :     MEMORANDUM AND
                                                            :          ORDER
EQD CORPORATION,                                            :
                              Defendant.                    :
                                                            :
-------------------------------------------------------------X
```

J. PAUL OETKEN, District Judge:

EQD Corporation ("EQD" or "Defendant") has moved to dismiss the complaint filed by Eternal Asia Supply Chain Management (USA) Corporation ("Eternal Asia" or "Plaintiff"). EQD invokes the first-to-file doctrine and argues that this Court lacks personal jurisdiction. For the reasons that follow, the Court grants EQD's motion to dismiss on first to file grounds and dismisses the case without prejudice to Eternal Asia's ability to re-assert its claims in the first-filed action currently pending in the Central District of California.

I.     **Background**[1]

This is a case about soured business dealings between EA Display, Ltd. ("EA Display") and EQD with respect to the supply, purchase, and delivery of televisions. The dispute turns on two separate incidents. The so-called "Failure Dispute" began in late 2010, when EQD contracted to purchase $1,354,250 in televisions from EA Display. (Compl. at ¶¶ 8-10.) Eternal Asia alleges that "the goods were delivered to either [EQD] or to the end consumers," and that

---

[1] When presented with a motion to dismiss pursuant to Rule 12(b), the Court must accept as true all well-pleaded factual allegations in the complaint and "draw [ ] all inferences in the plaintiff's favor." *Allaire Corp. v. Okumus*, 433 F.3d 248, 249-50 (2d Cir. 2006) (internal quotations omitted).

1

these end consumers paid EQD, but "Defendant has failed to remit the fully agreed upon payment to EA Display." (*Id.* at ¶ 11.) Specifically, notwithstanding demands by EA Display, EQD has not paid $163,646.40 of the balance. (*Id.* at ¶¶ 12-14.) EQD argues in its motion papers that the televisions at issue suffered "epidemic" failure and that EA Display failed to replace the defective units. (EQD Corp.'s Mem. of Law in Supp. of its Mot. to Dismiss ("Mot. to Dismiss"), at 1.) In this case, Eternal Asia's claims for relief all turn on the Failure Dispute. EA Display has assigned its collection claim to Eternal Asia. (Compl. at ¶ 7.)

Defendant explains, and Plaintiff agrees, that another dispute between Defendant and EA Display – the so-called "Delivery Dispute" – arose in July 2011, even as the Failure Dispute persisted. (Mot. to Dismiss at 1.; Pl.'s Mem. of Law in Opp. to Mot. to Dismiss ("Opp."), at 16-17. ) The Delivery Dispute, which is not directly at issue here, involves allegations by Defendant that EA Display, among others, may be partly or wholly liable for damage to televisions purchased by EQD for delivery to specified customers. (*Id.*)

On October 31, 2011, EQD filed a complaint in the Central District of California in which it alleged liability against EA Display and Eternal Asia, along with numerous other parties, relating to the Delivery Dispute. (Def.'s Ex. 1 ("Cal. Compl.") at ¶¶ 19-30.) Eternal Asia states that it "had sent [EQD] a draft complaint prior to commencing an action, in order to promote settlement discussions," and that EQD responded to this draft complaint (which Eternal Asia threatened to file in the Central District of California) by filing its own complaint. (Opp. at 13-14.) In its complaint, EQD described the Failure Dispute:

> In at least two responses to [EQD] . . . [Eternal Asia] and [EA Display] have claimed that [EQD] is otherwise "indebted" to [EA Display] "in the amount of approximately $163,000," claiming that this amount must be "fully paid before discussion about any other issues or shipments." This demand apparently relates

2

to payments allegedly due with respect to certain units of four different television products shipped to City of Industry, California, in 2011.

(Cal. Compl. at ¶¶ 17-18.)[2]  EQD also requested declaratory relief vis-à-vis the Failure Dispute. In key part, its Fourth Claim for Relief states:

> 32.  There is a real and actual controversy between plaintiff [EQD], on the one hand, and defendants [Eternal Asia] and [EA Display], on the other hand, regarding whether or not [EQD] is "indebted" to those defendants "in the amount of approximately $163,000," or, instead, whether defendants [Eternal Asia] and [EA Display] have breached certain duties and are indebted to [EQD] as a result of the "epidemic" failures of four television products.
>
> 33.  Declaratory relief is appropriate to resolve the foregoing present and justiciable controversy, and plaintiff requests that the Court determine and adjudge the controversy by declaring that [EQD] is not indebted to [Eternal Asia] and [EA Display] and, instead, that [Eternal Asia] and [EA Display] are responsible for their defective products sold to [EQD].

(*Id.* at ¶ 32-33.)

The Central District of California proceedings occurred before Judge Selna ("California Proceedings").  On January 26, 2012, the clerk entered default as to Eternal Asia in the California Proceedings.  (California Proceedings, 8:11-cv-1586-JVS-MLG, Dkt. No. 17.) Eternal Asia later moved to set aside default and filed a motion to dismiss the Fourth Claim for Relief, concerning the Failure Dispute.  (*Id.* at Dkt. Nos. 24, 25.)  On May 21, 2012, Judge Selna denied Eternal Asia's motion to set aside default and accordingly vacated its partial motion to dismiss.  (*Id.* at Dkt. No. 34.)  On August 31, 2012, Judge Selna denied Eternal Asia's second motion to set aside the entry of default, but also denied EQD's motion for default judgment as to Eternal Asia because not all defendants in the California Proceedings were in default and some defendants had answered to defend on the merits.  (*Id.* at Dkt. No. 47.)  In that ruling, Judge

---

[2] Courts may judicially notice public documents, including filings from other courts.  *See* Fed. R. Evid. 201.

3

Selna discussed the relationship for purposes of default judgment between claims arising from the Failure Dispute and claims arising from the Delivery Dispute:

> Additionally, as to [Eternal Asia], and its parent corporation, unserved party [EA Display], additional claims for breach of contract and breach of warranty are asserted on the same facts.  Also as to these parties is a claim for declaratory relief, regarding a claimed amount of setoff based on an unrelated dispute.  Although these additional claims are asserted against Eternal Asia and [EA Display], a common claim is asserted against all Defendants, and the underlying factual allegations and overall nature of the claims asserted in this action are sufficiently cohesive to support the Court's ultimate conclusion that the party in default and the answering parties are similarly situated

(*Id.* at Dkt. No. 47, at 5.)  Since this ruling, several other parties have left the California Proceedings through stipulations.  (*Id.* at Dkt. Nos. 48, 53.)

After EQD filed its complaint in the California Proceedings, but before the clerk entered default against Eternal Asia in that case, Eternal Asia filed the instant lawsuit ("the New York Proceedings").  Eternal Asia seeks monetary damages and attorney's fees on the basis of four causes of action, each of which relates to the $163,646.40 balance allegedly owed by EQD with respect to the Failure Dispute.  (*See* Compl. at ¶¶ 17, 19, 20, 25, 31, and 38.)  EQD has moved to dismiss the Complaint on two grounds: (1) the "first to file" rule and (2) lack of personal jurisdiction.  (Mot. to Dismiss at 4-11.)

## II.     Discussion

### A.     Legal Standard

"As a general rule, where there are two competing lawsuits, the first suit should have priority." *Employers Ins. of Wausau v. Fox Entm't Group, Inc.*, 522 F.3d 271, 274-75 (2d Cir. 2008) (citations omitted).  This "first to file rule embodies considerations of judicial administration and conservation of resources." *First City Nat. Bank & Trust Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989) (citing *Kerotest Mfg. Co. v. C-O-Two Fire Equip. Co.*, 342 U.S.

4

180, 183 (1952)); *see also 800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 131 (S.D.N.Y. 1994) ("Where two courts have concurrent jurisdiction over an action involving the same parties and issues, courts will follow a 'first filed' rule whereby the court which first has possession of the action decides it."). It applies "where proceedings involving the same parties and issues are pending simultaneously in different federal courts." *Sotheby's, Inc. v. Minor*, 08 Civ. 7694, 2009 WL 73134, at *1 (S.D.N.Y. Jan. 6, 2009).

"The first-filed rule is not to be applied mechanically, but is intended to aid judicial administration by acting as a presumption that may be rebutted by proof of the desirability of proceeding in the forum of the second-filed action." *Reliance Ins. Co. v. Six Star, Inc.*, 155 F. Supp. 2d 49, 54 (S.D.N.Y. 2001) (citations and quotation marks omitted). "The purposes behind this rule are to avoid duplication of judicial effort, to avoid vexatious litigation in multiple forums, to achieve comprehensive disposition of litigation among parties over related issues, and to eliminate the risk of inconsistent judgments." *Fleet Capital Corp. v. Mullins*, 03 Civ. 6660, 2004 WL 548240, at *4 (S.D.N.Y. Mar. 18, 2004) (citing *Regions Bank v. Wieder & Mastroianni, PC*, 170 F. Supp. 2d 436, 439 (S.D.N.Y. 2001)). "Courts already heavily burdened with litigation with which they must of necessity deal should . . . not be called upon to duplicate each other's work in cases involving the same issues and the same parties." *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1203 (2d Cir. 1970) (quoting *Crosley Corp. v. Hazeltine Corp.*, 122 F.2d 925, 930 (3d Cir. 1941)). For that reason, "[t]he party that seeks to deviate from the first-filed rule has the burden of demonstrating that circumstances justifying an exception exist." *Sotheby's, Inc.*, 2009 WL 73134, at *1 (citation omitted).

The Second Circuit recognizes "only two exceptions to the first-filed rule: (1) where the 'balance of convenience' favors the second-filed action, and (2) where 'special circumstances'

warrant giving priority to the second suit." *Employers Ins. of Wausau*, 522 F.3d at 275 (citations omitted). These exceptions are "premised on the notion that the 'federal declaratory judgment is not a prize to the winner of a race to the courthouses.'" *Id.* (citations omitted). "[O]ne of the special circumstances justifying an exception is where a plaintiff, having been informed that a defendant firmly intends to file an action against the plaintiff[], races to the Court to file its own action in a more favorable forum." *Rico Records Distributors, Inc. v. Ithier*, 364 F. Supp. 2d 358, 360 (S.D.N.Y. 2005) (citations omitted). Courts also pay little regard to the date of filing when the competing suits were commenced within days of each other. *Don King Productions, Inc. v. Douglas*, 735 F. Supp. 522, 532 (S.D.N.Y. 1990) (citations omitted). That said, "an exercise of a party's right to declaratory relief does not necessarily constitute an anticipatory filing for purposes of an exception to the first filed rule." *800-Flowers, Inc.*, 860 F. Supp. at 132.

The first-filed rule presents a puzzle: when a party claims that the rule applies, which of the two courts handling allegedly competing lawsuits should ascertain whether the rule applies and then decide whether to retain or surrender control of the litigation? While it is theoretically possible for both courts to reach their own independent evaluations, "the risk of inconsistent results strongly counsels against such a course." *MSK Ins., LTD. v. Employers Reins. Corp.*, 212 F.Supp.2d 266, 268 n.4 (S.D.N.Y. 2002). Accordingly, this district recognizes a "bright-line rule" that "[t]he court before which the first-filed action was brought determines which forum will hear the case." *MSK Ins.*, 212 F. Supp. at 267 (footnotes omitted); *see also Citigroup Inc. v. City Holding Co.*, 97 F. Supp. 2d 549, 555 (S.D.N.Y. 2000) ("[W]here proceedings involving the same parties and issues are pending simultaneously in different federal courts the first-filed of the two takes priority absent 'special circumstances' or a balance of convenience in favor of the second." (citation omitted)).

In other words, the Court must ascertain whether the first-filed rule and any of its exceptions apply. *See Kellen Co., Inc. v. Calphalon Corp.*, 54 F. Supp. 2d 218, 221-22 (S.D.N.Y. 1999) (finding first-filed rule applicable and granting a motion to dismiss on that ground). If the Court finds that the first filed rule does apply, and that the present case is not the first-filed action, then it must stay or dismiss the proceedings pending a decision about appropriate venue by the court before which the first-filed action was brought. *See Citigroup Inc.*, 97 F. Supp. 2d at 555 ("In applying the rule and in furtherance of its underlying principles, the court of first-filing may enjoin the parties from proceeding in the later-filed action.").

B.     **Application of Law to Facts**

EQD argues that the Court should dismiss the Complaint because this litigation is duplicative of the California Proceedings, constitutes vexatious litigation, is unnecessary to comprehensively resolve all issues between the parties, and is inconsistent with the entry of default in the California Proceedings. (Mot. to Dismiss at 4-7.) Eternal Asia responds by arguing that the parties in the New York and California Proceedings lack substantial identity, the suits arise from different subject matter, and the anticipatory declaratory judgment exception applies. (Opp. at 12-17.) The Court concludes that the first-to-file doctrine does apply to this litigation.

First, the issues in the California and New York Proceedings are substantially similar. *See Sotheby's, Inc.*, 2009 WL 73134, at *1. The California Proceeding includes a request for declaratory judgment that *squarely* addresses the Failure Dispute, which is also at the heart of the New York Proceeding. Indeed, the facts described in paragraphs 13 and 14 of the California Complaint, combined with the Claim for Relief stated in paragraphs 32 and 33, overlap almost perfectly with the issues disputed here. The presence of *other* claims in the California

7

Proceeding that arise from the Delivery Dispute does not undermine the similarity of the issues in the two proceedings; the law does not require that an issue be alleged in solitude and without adornment for the first-to-file doctrine to apply. Nor does the nature of the relief sought in the New York Proceedings create prohibitive dissimilarity, as a declaratory judgment in the California Proceedings that EQD is not indebted to Eternal Asia or EA Display for alleged damages arising from the Failure Dispute would directly bear on all of Eternal Asia's claims in this case. In sum, an essential legal issue in both cases is whether EQD owes Eternal Asia a sum of approximately $163,000 as a result of both parties' conduct in a single course of events.

Further, even as Judge Selna noted that the two Disputes between Eternal Asia and EQD at issue in the California Proceedings are "unrelated," he also denied a motion for default judgment on the ground that "the underlying factual allegations and overall nature of the claims asserted in this action are sufficiently cohesive to support the Court's ultimate conclusion that the party in default [Eternal Asia] and the answering parties [other defendants in the California Proceeding] are similarly situated." At the very least, this language suggests that Judge Selna may view the two Disputes as part of a cohesive whole and as sufficiently intertwined to treat them as a single matter for purposes of litigation rather than as two discrete matters. The principle of comity central to this Circuit's first-to-file doctrine is thus implicated with particular force.

The Court accordingly concludes that the first-to-file requirement of "identical or substantially similar . . . claims" is satisfied. *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 481 (S.D.N.Y. 2007) (citation omitted), *aff'd sub nom. New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010).

Second, the Court finds substantial similarity in the parties to both proceedings. EA Display has assigned its claim arising from the Failure Dispute to Plaintiff Eternal Asia. In the California Proceedings, EQD has sued a number of entities in connection with the Delivery Dispute, but specifies in its complaint that its Fourth Claim for Relief—arising from the Failure Dispute—is asserted only against Eternal Asia and EA Display. (Cal. Compl.) EQD has not served EA Display in that litigation. (California Proceedings, 8:11-cv-1586-JVS-MLG, Dkt. No. 47., at 5 n.3.) Thus, the Fourth Claim for Relief in California and the substantially similar claims for relief in this case involve only two parties: Eternal Asia and EQD. Whether EA Display's assignment to Eternal Asia was valid and whether Defendant can obtain declaratory judgment against Eternal Asia are questions that the Court need not (and will not) address at this juncture. The first-to-file requirement of "identical or substantially similar parties" is satisfied. *Am. Steamship*, 474 F. Supp. 2d at 481.

Third, recognizing that the first-to-file rule should not be applied mechanically, the Court concludes that the policy considerations that animate this Circuit's first-to-file doctrine are implicated by this litigation. *See Reliance Ins.*, 155 F. Supp. 2d at 54. Principles of comity are squarely implicated where another district court has already addressed motions for default judgment and motions to dismiss involving similar issues and the same parties. Further, it would plainly be duplicative and burdensome for two courts simultaneously to address the parties' liability for the $163,646.40 at issue in the Failure Dispute, even if one court dealt with a request for monetary damages while the other adjudicated a request for declaratory relief. A decision by either court would be capable of resolving this issue; a decision by Judge Selna, moreover,

9

would be uniquely capable of resolving comprehensively all issues between Eternal Asia and EQD—and might therefore better structure litigation tactics and settlement discussions.[3]

Finally, the "special circumstances" exception of an improper anticipatory declaratory judgment motion does not apply. *See Employers Ins. of Wausau*, 522 F.3d at 275. "Whether a filing is anticipatory and overcomes the presumption in favor of the first-filed suit is highly fact-dependent." *Michael Miller Fabrics, LLC v. Studio Imports Ltd., Inc.*, 12 Civ. 3858, 2012 WL 2065294, at *2 (S.D.N.Y. June 7, 2012) (citation omitted).

EQD's decision to file suit in California after receiving a draft complaint from Eternal Asia undoubtedly qualifies as "anticipatory" litigation as defined by the Second Circuit. *See Employers Ins. of Wausau*, 522 F.3d at 276 ("District courts in this Circuit have recognized that, in order for a declaratory judgment action to be anticipatory, it must be filed in response to a direct threat of litigation that gives specific warnings as to deadlines and subsequent legal action."). However, it does *not* qualify as "improper." As Judge Baer has explained:

> A filing in this context is improper where it attempts to exploit the first-filed rule by securing a venue that differs from the one that the filer's adversary would be expected to choose. Where a party is prepared to pursue a lawsuit, but first desires to attempt settlement discussions, that party should not be deprived of the first-filed rule's benefit simply because its adversary used the resulting delay in filing to proceed with the mirror image of the anticipated suit. Otherwise, potential plaintiffs would be discouraged from first attempting to resolve their claims without resorting to litigation

*Ontel Products, Inc. v. Project Strategies Corp.*, 899 F. Supp. 1144, 1150 (S.D.N.Y. 1995). A natural implication of this reasoning is that the forum shopping concerns that justify the anticipatory litigation exception are markedly lessened when a party races to the same court

---

[3] At the motion to dismiss stage, the Court lacks sufficient information from the materials of which it can properly take notice to ascertain whether Eternal Asia's suit qualifies as "vexatious litigation." (Mot. to Dismiss, at 6.)

chosen by their adversary. *See* 17 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE § 111.13(1)(c)(i) (3d ed. 2007) (noting that a plaintiff should not be allowed to file "a preemptive action in order to deprive the 'natural plaintiff' of its choice of forum").

Here, both parties identified the Central District of California as their preferred forum for litigation over the Failure Dispute—Eternal Asia by threatening a suit there and EQD by actually filing.[4] Further, Eternal Asia was hardly caught flat-footed by EQD's tactics. The parties had already begun settlement negotiations, Eternal Asia had already hired a legal team and produced a draft complaint involving the Failure Dispute, and Eternal Asia had demonstrated its willingness to litigate in the Central District of California.[5]

On these facts, Defendant's actions do not rise to the level of a special circumstance sufficient to overcome the general rule that a party seeking "to deviate from the first-filed rule has the burden of demonstrating that circumstances justifying an exception exist." *Sotheby's, Inc.*, 2009 WL 73134, at *1 (citation omitted).

Because the first-to-file rule applies to these proceedings, the ultimate decision as to where the claims are properly litigated is reserved to Judge Selna, who maintains jurisdiction

---

[4] Courts in this district have recognized that a "notice letter is a factor weighing in favor of permitting the second action to take priority." *Fed. Ins. Co. v. May Dept. Stores Co.*, 808 F. Supp. 347, 350 (S.D.N.Y. 1992) (quoting *Sharimalia Food Corp. v. Monarch Wine Co.*, 91 Civ. 6691, 1992 WL 58308, at *3 (S.D.N.Y. Mar. 16, 1992)). Here, Eternal Asia's threat of litigation and decision to share a draft complaint functioned as the equivalent of a classic notice letter. Nonetheless, because Eternal Asia did not suffer any ill effects on its power to select the forum and did not otherwise suffer prejudice from EQD's anticipatory suit, this factor does not control the Court's analysis.

[5] Even if Eternal Asia was merely bluffing, such are the risks of bold gambits in legal negotiations.

over the first-filed action.[6]  *See MSK Ins.*, 212 F. Supp. 2d at 267.  Accordingly, the claims in this action will be dismissed on the assumption that they will be resolved by the California Proceedings, but without prejudice to their reassertion in the event that Judge Selna reaches a contrary conclusion under the first-to-file doctrine.

Because the Court grants EQD's motion on first-to-file grounds, it is unnecessary to address EQD's alternative argument that personal jurisdiction is lacking.

### III. Conclusion

For the foregoing reasons, Defendant's motion to dismiss is GRANTED without prejudice to Plaintiff's right to assert its claims in the Central District of California and to re-assert its claims in this Court if the Central District of California concludes that the litigation should be transferred to or otherwise determined by the Southern District of New York.

The Clerk of Court is directed to terminate the motion at docket entry #9 and to close this case.

SO ORDERED.

Dated: New York, New York
       December 12, 2012

_____
J. PAUL OETKEN
United States District Judge

---

[6] For good reason, neither party suggests that the "balance of conveniences" exception to the first-to-file rule requires that the Court deny the motion to dismiss.  Such an argument would verge on the preposterous given the location of the parties, the likely location of witnesses and evidence, and the substantial investment in this case already undertaken by the federal court in California.